UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

MALIK CAMPBELL,

                    Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-9 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 23, 2018, Malik Campbell pleaded guilty to Count One of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Malik Campbell is hereby sentenced to 188 months of incarceration, 3 years of supervised release, no fine, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a 75-count Superseding Indictment against 23 defendants, including Malik Campbell ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 23, 2018, Defendant pleaded guilty to Count One of the Superseding Indictment, which charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), and admitted as racketeering acts his participation in: (1) the attempted murder of John Doe #1, as alleged in Racketeering Act One-B of the Superseding Indictment; and (2) conspiring to distribute cocaine base, as alleged in Racketeering Act Two. *See* Plea Agreement ¶ 1, ECF No. 546.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range,

the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now thirty-one years old, was born on August 18, 1987 in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 79, ECF No. 651. Defendant was born to the consensual union of Jerry Campbell and Rose Marie Gazader. *Id.* Defendant's father resides in England, and his employment status is unknown. *Id.* Defendant's mother resides in Jamaica, West Indies, where she is the owner of a bar. *Id.* Defendant reports he has a good relationship with both of his parents, and they remain supportive. *Id.*

Defendant has one full sister and four maternal half-siblings, and he believes he has over thirty paternal half siblings, though he could provide information for only two. *Id.* ¶ 80.

2

Defendant reports he has a good relationship with his full sister, all his maternal half-siblings, and the two paternal half-siblings he named. *Id.* They are all aware of Defendant's legal situation and remain supportive. *Id.*

Defendant, his sister, and his maternal half-siblings were primarily raised by his mother and his now-deceased maternal grandmother in Brooklyn under adequate financial circumstances. *Id.* ¶ 81. Defendant's father was not in the home and relocated to England when Defendant was five years old. *Id.* Despite his relocation, Defendant's father provided financial assistance for Defendant and his sister. *Id.*

Defendant lived with friends in Brooklyn from the age of twelve until the age of fourteen; he did not provide a reason for the move. *Id.* In 2001, when Defendant was fourteen years old, Defendant's mother moved to Jamaica. *Id.* Because Defendant did not wish to move, he moved in with his paternal aunt for approximately two years and then his maternal aunt for approximately three years. *Id.* Defendant began living on his own at age twenty. *Id.*

Since July 16, 2015, Defendant has been housed at the Metropolitan Detention Center ("MDC") in Brooklyn, where he has worked in the kitchen and as an orderly. *Id.* ¶ 86. According to the Bureau of Prisons SENTRY database, he has incurred nine separate disciplinary infractions stemming from phone abuse, refusal to obey an order, drug/alcohol use, possession of a hazardous tool, and possession of an unauthorized item. *Id.*

Defendant, unmarried, has four children with three different women. *Id.* ¶ 82. Defendant's oldest child, age thirteen, is the product of a relationship between Defendant and Nyeshia Doling. *Id.* Defendant and Ms. Doling were involved from 2004 to 2005. *Id.* Prior to his arrest, Defendant had regular contact with Ms. Doling and has provided her financial assistance as needed without a formalized order of child support. *Id.* Defendant reports he has a

good relationship with Ms. Doling, and both she and their daughter are aware of his arrest and remain supportive. *Id.*

From 2005 to 2009, Defendant was involved with Shavonne Monfiston. *Id.* ¶ 83. Together, they have two daughters, ages eight and eleven. *Id.* Prior to his incarceration, Defendant had regular contact with Ms. Monfiston and has provided her financial assistance as needed without a formalized order of child support. *Id.* Defendant reports he has a good relationship with Ms. Monfiston, and both she and their daughters are aware of his current legal status and remain supportive. *Id.*

Defendant has been involved with Venice McIntosh since 2009. *Id.* ¶ 84. Together, Defendant and Ms. McIntosh have one child who is five years old and currently in school. *Id.* Defendant lived with Ms. McIntosh for roughly eight years prior to his arrest for the instant offense. *Id.* ¶ 85. Ms. McIntosh is aware of Defendant's arrest and remains supportive. *Id.* ¶ 84. During a telephonic interview, she described Defendant as a good father who provides for all his children. *Id.* ¶ 85.

When Defendant was seven years old, a psychiatrist at Kings County Hospital diagnosed him with Attention Deficit Hyperactive Disorder and prescribed him Ritalin. *Id.* ¶ 89. He took the medication for only a few months because he did not like how it made him feel. *Id.* He continued therapy for about one year. *Id.* While incarcerated at the MDC, Defendant was diagnosed with high blood pressure and prescribed medication. *Id.* ¶ 88.

Defendant has an extensive history of drug and alcohol abuse. *Id.* ¶¶ 88, 90. He reported he first tried alcohol when he was five years old. *Id.* ¶ 90. He estimated he was consuming a gallon of hard liquor daily, shared with his friends, since 2012. *Id.* Defendant first used marijuana when he was ten years old. *Id.* By the time he was twelve years old, he was

4

smoking $10.00 worth of marijuana per day. *Id.* At the time of Defendant's arrest for the instant offense in 2014, Defendant reported he was smoking half an ounce of marijuana—about $200.00 worth of marijuana—per day. *Id.* Defendant admitted to using marijuana while incarcerated at the MDC. *Id.* He also admitted to testing positive for marijuana on more than one occasion while on parole. *Id.* ¶ 91. Defendant was admitted to an eighteen-month substance abuse treatment program in 2006 as an alternative to custody. *Id.* He completed only six months of the program because he found it "too intense" and relapsed with marijuana soon thereafter. *Id.*

Defendant completed his elementary schooling at Public School 92 in Brooklyn. *Id.* ¶ 93. He reported he completed the seventh grade of his formal education at Middle School 2 in Brooklyn. *Id.* Defendant was discharged from the New York City School System on May 22, 2007. *Id.* He reported he "dropped out to be in the streets." *Id.* Defendant has expressed interest in preparing for and taking a General Educational Development diploma. *Id.* Prior to Defendant's incarceration, he had never held a single legitimate job in his life, other than working at a Wendy's restaurant for one year: from 2009 to 2010. *Id.* ¶¶ 95-96.

Defendant's criminal history includes numerous past convictions. In 2005, Defendant pled guilty to the criminal sale of a controlled substance in the third degree in Kings County Supreme Court and was sentenced to six months to four years custody. *Id.* ¶ 69. He was paroled in 2008, but his parole was revoked in 2013, and he was remanded on his previous sentence for an additional two months and five days. *Id.* In 2011, Defendant was sentenced to 731 days custody with no supervision to follow for possession of narcotics and sale of a controlled substance in New London Supreme Court. *Id.* ¶ 71. Defendant was also convicted of evading responsibility for property damage/injury in relation to fleeing the scene of a car accident in New London, Connecticut. *Id.* ¶ 70. He was sentenced to 30 days custody to run concurrently with

his 731-day sentence noted above. *Id.* Defendant was also convicted of attempted murder in New York State Court for his role in the attempted murder of John Doe #1, as related to the instant offense and as set forth in further detail below. *Id.* ¶ 72.

Defendant was a member of the Bloods street gang and the Shoota Gang ("SG"). *Id.* ¶ 39. He was also an associate of the Outlaw Gangsta Crips ("OGC"). *Id.* The SG was an offshoot of the OGC that included members and associates of the OGC as well as members and associates of other gangs, including the Eight Trey Crips, the Bosses in Business, and the Bloods. *Id.* ¶ 5. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution. *Id.* ¶ 5. They have also committed acts of violence including murder, attempted murder, robbery, and assault, among other crimes. *Id.* The purpose of the OGC includes: enriching the gang and its members; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in its victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 7.

Members and associates of the OGC sold cocaine base in New York, Connecticut, and West Virginia and shared drug suppliers, drug turf, and customers. *Id.* ¶¶ 14-16. For his part, Defendant distributed cocaine base in Connecticut with co-defendants Conell Brogdon, Steven Cherenfant, and Parris Desuze. *Id.* ¶ 15. With co-defendants Leonard Barletto, Courtney Coy, and Desuze, Defendant obtained and distributed cocaine base from multiple suppliers including co-defendants Cory Harris and Jeffrey Joseph and dealers the defendants identified as "Un" and "Ice." *Id.* ¶ 16.

On June 3, 2014, Defendant and co-defendants Brogdon, Joseph, Stephon Rene, and Brandon Greenidge surrounded John Doe #1 inside of the Big Boy Deli at 1452 Nostrand

6

Avenue in Brooklyn, New York, and attempted to steal his chain necklace. PSR ¶ 41. During the confrontation, Defendant retrieved a gun from Brogdon's pocket and shot John Doe #1 multiple times, which resulted in serious bodily injury. *Id.* After being hit with the first shot, John Doe #1 fell, shattering glass in the back of the deli. Gov't Sentencing Mem. ("Gov't Mem.") at 3, ECF. No. 672. After being hit in the chest, stomach, and rear, John Doe #1 crawled out of the deli's back exit. *Id.* He was hospitalized for one and a half months as a result of the shooting. *Id.* Video of the incident shows the deli was busy at the time of the shooting. *Id.* Indeed, just minutes before the shooting, the video shows a mother with her young child purchasing drinks and food. *Id.*

Defendant was sentenced to 15 years imprisonment and 5 years supervised release in Kings County Supreme Court in connection with the attempted murder of John Doe #1. PSR ¶ 72. Defendant was writted from local custody on July 16, 2015, and he made no post-arrest statements. *Id.* ¶ 39.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's sale of illicit narcotics both provided dangerous and illegal drugs to his community and also helped to fund unlawful gang activity. Defendant's shooting of John Doe #1 both nearly resulted in the victim's death and also endangered the community at large.

Defendant fired multiple shots at the victim and hit him in the chest, stomach, and rear. Moreover, the deli was busy at the time of the shooting.

The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter this Defendant from further criminal activity and encourages him to sever his ties to the Eight Trey Crips, the SG, the Bloods, and the OGC. It also seeks to protect the public from Defendant's conduct in the future. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains. Finally, it also considers Defendant's family and community support and his desire to be a present father.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to Count One of the Superseding Indictment, which charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Plea Agreement ¶ 1. In connection with that conspiracy, Defendant admitted as racketeering acts his participation in: (1) the attempted murder of John Doe #1 as alleged in Racketeering Act One-B of the Superseding Indictment; and (2) conspiring to distribute cocaine base as alleged in Racketeering Act Two. *See id.*

The parties dispute the statutory penalties applicable to Defendant. The Probation Department ("Probation") argues the appropriate statutory maximum is life imprisonment. Defendant and the Government, however, agree with each other that the appropriate statutory maximum is 20 years imprisonment, as explicitly agreed to in Paragraph One of the Plea Agreement. The Court considers the parties' contentions in turn.

Probation argues Defendant pleaded guilty to a Class A felony, which renders the statutory maximum term life imprisonment. PSR ¶ 101 & n.1. Under Probation's analysis, even though the Plea Agreement stipulates Defendant faces a maximum term of 20 years, 18 U.S.C. § 1963(a) explicitly provides the statutory maximum term of imprisonment is "life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." PSR ¶ 101 & n.1. The Superseding Indictment charged a conspiracy involving 280 grams or more of a substance containing cocaine base. Superseding Indictment ¶ 15. Under 21 U.S.C. § 841(b)(1)(A)(iii), defendants accountable for 280 grams or more of a substance containing cocaine base "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." And per 18 U.S.C. § 3559, "an offense that is not specifically classified by a letter grade in the section defining it" is classified as a Class A felony "if the maximum term of imprisonment authorized is . . . life imprisonment." Probation therefore argues Racketeering Act Two—the racketeering activity to which Defendant pleaded guilty—is a Class A felony, and the statutory custodial range under 18 U.S.C. § 1963(a) is zero to life incarceration.

Defendant and the Government have a different view. Peter Quijano, Esq., counsel for Mr. Parris Desuze, a co-defendant in this case, filed a letter with the Court dated March 1, 2019 on behalf of his client and several other co-defendants in this case, including Campbell. Mar. 1, 2019 Letter ("Def. Letter"), ECF No. 699. Counsel represented he also filed the letter on behalf of the attorneys of specified co-defendants and the Assistant United States Attorney assigned to the case. *Id.*

Objecting to Probation's conclusions as to the applicable statutory maximum, Mr. Quijano advised the Court that at the time the parties entered into the Plea Agreement, they clearly and unambiguously intended "to enter into a plea of guilty to a violation of a crime which

9

would result in a statutory maximum of 20 years." *Id.* at 2. The defendants charged with cocaine base distribution conspiracy as alleged in Racketeering Act Two therefore "allocuted as to their intent to distribute cocaine base[] without any reference to a mandatory minimum amount of cocaine base." *Id.* Indeed, Counsel notes, "the Court, during the plea hearing, advised the Defendants that the possible statutory maximum was twenty (20) years." *Id.* Counsel accordingly requested "the Court SO ORDER that the Statutory Provisions regarding custody is a maximum term of imprisonment of twenty (20) years for . . . Malik Campbell." *Id.*

The Government filed a letter with the Court on March 4, 2019, agreeing with defense counsel that the applicable statutory maximum would be 20 years and joined the defendants' "request that the Court order that the maximum term of imprisonment as to each of the Moving Defendants is 20 years." Mar. 4, 2019 Letter ("Gov't Letter"), ECF No. 701. On March 4, 2019, the Court granted the requests of defense counsel and the Government and ordered the statutory maximum applicable to Defendant would be 20 years. Order, ECF No. 702; Order, ECF No. 703.

Under Probation's view that Defendant's conduct should be classified a Class A felony, Defendant also faces: a maximum term of supervised release of five years, 18 U.S.C. § 3583(b)(1); a maximum fine of $250,000.00, *id.* § 3571(b)(3); mandatory restitution, *id.* § 3663A; and a special assessment of $100.00, *id.* § 3013. Defendant would be ineligible for probation if Count One is a Class A felony. *Id.* § 3561(a).

Under the Government and defense counsel's agreed-upon view that Defendant's conduct is punishable by no more than 20 years, which classifies his conduct as a Class C felony, Defendant also faces: a maximum term of supervised release of three years, 18 U.S.C. §

10

3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b)(3); mandatory restitution, *id.* § 3663A; and a special assessment of $100.00, *id.* § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The parties dispute the Guidelines level and calculations applicable to Defendant. The parties disagree both as to the appropriate offense level for the racketeering activities to which Defendant pleaded guilty and to the appropriate Criminal History Category. Defense counsel argues the Court should impose a Level 31, Criminal History Category II sentence consistent with the Plea Agreement. Probation and the Government, however, contend the Court should impose a Level 32, Criminal History Category III sentence, as reflected in the PSR. The Court considers the parties' contentions in turn.

The appropriate Guideline for violations of 18 U.S.C. § 1962(d) is Guideline § 2E1.1, which applies to unlawful conduct relating to racketeer influenced and corrupt organizations and instructs the Court to use the greater of a base offense level of 19 or "the offense level applicable to the underlying racketeering activity." *See* United States Sentencing Commission, Guidelines Manual ("USSG") § 2E1.1 (2018).

Defense counsel asks the Court to adopt the Guidelines estimate set forth in the Plea Agreement. Def. Sentencing Mem. Suppl. ("Def. Suppl.") at 1-2, ECF No. 687. The Plea Agreement sets forth the following Guidelines estimate as to the underlying racketeering activities: First, with respect to Racketeering Act One, the Plea Agreement applies USSG §

2A1.5, which pertains to conspiracy or solicitation to commit murder and provides a base offense level of 33. Plea Agreement ¶ 2. And second, with respect to Racketeering Act Two, the Plea Agreement applies USSG §§ 2D1.1(a)(5) and 2D1.1(c)(4), which pertain to conspiracy to commit unlawful trafficking and collectively provide a base offense level of 32. *Id.* The Plea Agreement further applied USSG § 2D1.1(b)(1), adding two levels to the base offense for possession of a dangerous weapon in connection with the offense and resulting in a total offense level of 34 for Racketeering Act Two. *Id.*

To determine the appropriate combined offense level pursuant to USSG § 3D1.4(a), the Plea Agreement adds two additional levels to the group with the highest offense level, resulting in a total adjusted offense level of 36. *Id.* It then subtracts two levels for global resolution pursuant to USSG § 5K2.0, two levels for acceptance of responsibility pursuant to USSG § 3E1.1(a), and one level for timely notifying the authorities of an intention to plead guilty pursuant to USSG § 3E1.1(b), resulting in an adjusted offense level of 31. *Id.* The Plea Agreement finally assumes Defendant falls within Criminal History Category II and provides Defendant would be subject to a range of imprisonment of 121 to 151 months to run concurrently with the remainder of the undischarged term of imprisonment imposed in Kings County pursuant to USSG § 5G1.3(b)(2). *Id.*

The Plea Agreement appropriately notes the Guidelines estimate set forth would not be binding on the Government, Probation, or the Court. *Id.* ¶ 3. Notably, Defendant also agreed not to appeal or otherwise challenge his conviction or sentence in the event the Court imposes a term of imprisonment of 168 months or below. *Id.* ¶ 4.

Because Defendant seeks to adopt the calculations in the Plea Agreement, he requests a sentence at the low end of the Level 31, Category II range enunciated in the Plea Agreement: 121

months to run concurrently with the undischarged term of imprisonment imposed in Kings County. Def. Suppl. at 2.

Probation takes a different approach in calculating the applicable Guidelines range as to the underlying racketeering activities. First, with respect to Racketeering Act One, Probation applies USSG § 2A1.5—conspiracy or solicitation to commit murder—which instructs the sentencing Court to refer to USSG § 2A2.1—attempted murder—if "the offense resulted in an attempted murder." PSR ¶ 48. USSG § 2A2.1 provides a base offense level of 33. Probation further applies USSG § 2A2.1(b)(1), adding two levels to the base offense because the victim sustained serious bodily injury and resulting in a total offense level of 35 for Racketeering Act One. *Id.* ¶¶ 49, 53.

Second, with respect to Racketeering Act Two, Probation applies USSG §§ 2D1.1(a)(5) and 2D1.1(c)(5), which pertain to conspiracy to commit unlawful trafficking and collectively provide a base offense level of 30. *Id.* ¶ 54. Notably, USSG § 2D1.1(a)(5) instructs the Court to apply the drug quantity table at USSG § 2D1.1(c). The drug quantity table at USSG § 2D1.1(c)(5) references offenses involving at least 280 grams but less than 840 grams of cocaine base. Probation presumably applies this provision because the Superseding Indictment alleged Defendant's conspiracy involved at least 280 grams of cocaine base. Superseding Indictment ¶ 15. It further applies USSG § 2D1.1(b)(1), adding two levels to the base offense for possession of a dangerous weapon in connection with the offense, resulting in a total offense level of 32 for Racketeering Act Two. PSR ¶¶ 55, 59.

To determine the appropriate combined offense level pursuant to USSG § 3D1.4(a), Probation adds two additional levels to the group with the highest offense level, making the total adjusted offense level 37. *Id.* ¶¶ 60-63. It then subtracts two levels for acceptance of

13

responsibility pursuant to USSG § 3E1.1(a) and one level for timely notifying the authorities of an intention to plead guilty pursuant to USSG § 3E1.1(b), resulting in an adjusted offense level of 34. *Id.* ¶¶ 65-67. It also notes Defendant was eligible for an additional two-level global resolution reduction, which would make the total offense level 32, and it finds Defendant falls within Criminal History Category III. *Id.* ¶¶ 74, 113. Consistent with these findings, Probation recommended a sentence at the high end of the level 32, Criminal History Category III sentencing range of 151 to 188 months: 188 months custody to run concurrently to any undischarged term of imprisonment. *See* Probation Sentence Recommendation at 1, ECF No. 651-1.

Though the Government does not agree with Probation's statutory analysis, as highlighted above, it agrees with Probation's Guidelines calculations. Gov't Mem. at 2. The Government accordingly asks the Court to impose a term of imprisonment within the advisory level 32, Criminal History Category III Guidelines range, *i.e.*, a term of imprisonment between 151 and 188 months. *Id.* at 5.

The Court recognizes a tension among the parties'—and the Plea Agreement's—application of the Guidelines in this case. In their calculations of the Guidelines applicable to Racketeering Act Two, the parties rely on different drug quantities from the drug quantity table. For example, Defendant, via the Plea Agreement, references USSG § 2D1.1(c)(4), which applies to offenses involving at least 840 grams but less than 2.8 kilograms of cocaine base. On the other hand, Probation references the drug quantity table at USSG § 2D1.1(c)(5), which applies to offenses involving at least 280 grams but less than 840 grams of cocaine base. But Defendant allocuted to his intent to distribute without reference to an amount of cocaine base. *See* Def. Letter. As defense counsel has recognized, had Defendant explicitly allocuted to conspiring to

14

distribute 280 grams or more of cocaine base, the applicable statutory maximum would arguably be life. *See id.*; *see also* 18 U.S.C. § 1963(a) (providing violations are punishable by "not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)"); 21 U.S.C. § 841(b)(1)(A)(iii) (noting defendants accountable for 280 grams or more of a substance containing cocaine base "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life."). But as noted, the Government and Defendant stipulate they did not intend to enter into a plea agreement for which the maximum statutory penalty exceeded 20 years of imprisonment. *See id.*; Gov't Letter.

All parties agree this Court should impose a sentence that runs concurrently with Defendant's New York State sentence under USSG § 5G1.3(b). *See* PSR ¶ 102; Def. Sentencing Mem. at 2-3; Gov't Mem. at 1, 6. As Defendant is already serving an undischarged term of imprisonment in New York State for criminal conduct relevant to the instant offense—the attempted murder of John Doe #1—USSG § 5G1.3(b) applies to this sentencing. USSG § 5G1.3(b) provides:

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense or conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of [USSG] § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> > (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
> >
> > (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

The parties stipulated in the Plea Agreement the terms of incarceration should run concurrently. Plea Agreement ¶ 2.

Defendant's past criminal convictions, described *supra*, yield a criminal history score of six, establishing a criminal history category of III. USSG Ch. 5, Part A.[1] Defendant's convictions for Possession of Narcotics and Sale of a Controlled Substance in New London Supreme Court and Criminal Sale of a Controlled Substance in Kings County Supreme Court contribute three criminal history points each, rendering Defendant's total criminal history score six. *See* PSR ¶ 73.

The Court finds the appropriate total offense level is 32, which, with a criminal history category of III, yields a Guidelines suggested term of imprisonment of between 151 and 188 months. USSG Ch. 5, Part A. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, *id.* § 5D1.2(a)(2), and a fine of between $17,500.00 and $175,000.00, *id.* §§ 5E1.2(c)(3), (h)(1). The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1, n.2. Probation notes there is no evidence Defendant has the ability to pay a fine. Probation Sentence Recommendation at 3.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

---

[1] The Plea Agreement calculated a guideline range under the assumption Defendant falls under a Criminal History Category of II. *See* Plea Agreement ¶ 2. The parties do not agree Defendant's criminal history category is III, as highlighted above. *Compare* Def. Suppl. at 1-2 (arguing Defendant is in Criminal History Category II, consistent with the Plea Agreement), *with* Gov't Sentencing Mem. at 2 (agreeing with Probation's conclusion Defendant is in Criminal History Category III).

## F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

## G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is applicable in Defendant's case, *see id.* § 3663. Since the instant offense occurred after April 24, 1996, restitution is mandatory pursuant to 18 U.S.C. § 3663A and Guideline § 5E1.1(a)(1). The victim has yet to respond to requests for affidavits of loss. PSR ¶ 111. As a result, the specific amounts owed to the individual victims are unknown and restitution cannot be determined with accuracy. *Id.* Nevertheless, this Court, per 18 U.S.C. § 3664(d)(5), reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims.

## CONCLUSION

A sentence of 188 months of incarceration to run concurrently with the undischarged state term of imprisonment, 3 years of supervised release, no fine because Defendant lacks the financial ability to pay a fine, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein, and imposes the special conditions of release proposed by the Probation Department, as follows:

1. The defendant shall submit his person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

2. The defendant shall comply with the Forfeiture Order.

3. The defendant shall not associate in person, through mail, electronic mail or telephone with any individual with an affiliation to any organized crime groups, gangs or any other criminal enterprise; nor shall the defendant frequent any establishment, or other locale where these groups may meet pursuant, but not limited to, a prohibition list provided by the Probation Department.

Probation Sentence Recommendation at 1. Defendant has the right to appeal this sentence because it exceeds 168 months of incarceration.

**SO ORDERED.**

s/WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 8, 2019
      Brooklyn, New York